1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMANTHA G. CHANEY *et al.*,

                    Plaintiff,

        v.

JOSEPH LEHMAN,

                  Defendant,

Case No.  C04-5881FDB

REPORT AND
RECOMMENDATION

**NOTED FOR**:
**September 16ᵗʰ 2005**

     This 42 U.S.C. § 1983 Civil Rights class action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is defendant's motion for summary judgment and dismissal of all damage claims. (Dkt. # 23).  Defendant Lehman contends he is entitled to qualified immunity from damages.  At issue is whether it was clearly established under the Due Process Clause of the 14ᵗʰ Amendment that inmates are entitled to a hearing before a release plan is denied when the inmate is held beyond their earned early release date and the inmate is subject to community custody or community placement.  Plaintiff has responded.  (Dkt. # 25).  Defendant has replied and the matter is now ripe for review.  (Dkt. # 25).

FACTS

REPORT AND RECOMMENDATION
Page - 1

Washington state has implemented a complex sentencing system.  Under this system some inmates may earn time off their sentence by programing and good behavior while incarcerated.  Contrary to plaintiff's assertions under this system the granting of time off the sentence is discretionary and does not create a liberty interest in amassing early release credits or days.  In Re Galvez, 79 Wash App 655 (Wash. 1995).

The plaintiffs have provided copies of the statutes relating to the granting of the sentence reduction and release of inmates before expiration of the normal sentence, RCW 72.09.130 and RCW 9.94A.728.  RCW 72.09.130 provides:

**Revised Code of Washington (RCW) 72.09.130 (Department of Corrections) Incentive system for participation in education and work programs -- Rules -- Dissemination**.

(1) The department shall adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges. The system shall include increases or decreases in the degree of liberty granted the inmate within the programs operated by the department, access to or withholding of privileges available within correctional institutions, and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance.

(2) Earned early release days shall be recommended by the department as a reward for accomplishment. The system shall be fair, measurable, and understandable to offenders, staff, and the public. At least once in each twelve-month period, the department shall inform the offender in writing as to his or her conduct and performance. This written evaluation shall include reasons for awarding or not awarding recommended earned early release days for good conduct and good performance. An inmate is not eligible to receive earned early release days during any time in which he or she refuses to participate in an available education or work program into which he or she has been placed under RCW 72.090460.

(3) The department shall provide each offender in its custody a written description of the system created under this section.

(Dkt # 25, Exhibit 2).

RCW 9.94A.728 provides:

RCW 9.94A.728 Earned release time.

No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:

(1) Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. The earned release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction. The correctional agency shall not credit the offender with earned release credits in advance of the offender actually earning the credits. Any program

established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. If an offender is transferred from a county jail to the department, the administrator of a county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned release time. An offender who has been convicted of a felony committed after July 23, 1995, that involves any applicable deadly weapon enhancements under RCW 9.94A.533 (3) or (4), or both, shall not receive any good time credits or earned release time for that portion of his or her sentence that results from any deadly weapon enhancements.

(a) In the case of an offender convicted of a serious violent offense, or a sex offense that is a class A felony, committed on or after July 1, 1990, and before July 1, 2003, the aggregate earned release time may not exceed fifteen percent of the sentence. In the case of an offender convicted of a serious violent offense, or a sex offense that is a class A felony, committed on or after July 1, 2003, the aggregate earned release time may not exceed ten percent of the sentence.

(b)(i) In the case of an offender who qualifies under (b)(ii) of this subsection, the aggregate earned release time may not exceed fifty percent of the sentence.

(ii) An offender is qualified to earn up to fifty percent of aggregate earned release time under this subsection (1)(b) if he or she:

(A) Is classified in one of the two lowest risk categories under (b)(iii) of this subsection;

(B) Is not confined pursuant to a sentence for:

(I) A sex offense;

(II) A violent offense;

(III) A crime against persons as defined in RCW 9.94A.411;

(IV) A felony that is domestic violence as defined in RCW 10.99.020;

(V) A violation of RCW 9A.52.025 (residential burglary);

(VI) A violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.401 by manufacture or delivery or possession with intent to deliver methamphetamine; or

(VII) A violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.406 (delivery of a controlled substance to a minor); and

(C) Has no prior conviction for:

(I) A sex offense;

(II) A violent offense;

(III) A crime against persons as defined in RCW 9.94A.411;

(IV) A felony that is domestic violence as defined in RCW 10.99.020;

(V) A violation of RCW 9A.52.025 (residential burglary);

(VI) A violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.401 by manufacture or delivery or possession with intent to deliver methamphetamine; or

(VII) A violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.406 (delivery of a controlled substance to a minor).

(iii) For purposes of determining an offender's eligibility under this subsection (1)(b), the department shall perform a risk assessment of every offender committed to a correctional facility operated by the department who has no current or prior conviction for a sex offense, a violent offense, a crime against persons as defined in RCW 9.94A.411, a felony that is domestic violence as defined in RCW 10.99.020, a violation of RCW 9A.52.025 (residential burglary), a violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.401 by manufacture or delivery or possession with intent to deliver methamphetamine, or a violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.406 (delivery of a controlled substance to a minor). The department must classify each assessed offender in one of four risk categories between highest and lowest risk.

(iv) The department shall recalculate the earned release time and reschedule the expected release dates for each qualified offender under this subsection (1)(b).

(v) This subsection (1)(b) applies retroactively to eligible offenders serving terms of total confinement in a state correctional facility as of July 1, 2003.

(vi) This subsection (1)(b) does not apply to offenders convicted after July 1, 2010.

(c) In no other case shall the aggregate earned release time exceed one-third of the total sentence;

(2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;

(b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;

(c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;

(d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;

(3) An offender may leave a correctional facility pursuant to an authorized furlough or leave of

absence. In addition, offenders may leave a correctional facility when in the custody of a corrections officer or officers;

(4)(a) The secretary may authorize an extraordinary medical placement for an offender when all of the following conditions exist:

(i) The offender has a medical condition that is serious enough to require costly care or treatment;

(ii) The offender poses a low risk to the community because he or she is physically incapacitated due to age or the medical condition; and

(iii) Granting the extraordinary medical placement will result in a cost savings to the state.

(b) An offender sentenced to death or to life imprisonment without the possibility of release or parole is not eligible for an extraordinary medical placement.

(c) The secretary shall require electronic monitoring for all offenders in extraordinary medical placement unless the electronic monitoring equipment interferes with the function of the offender's medical equipment or results in the loss of funding for the offender's medical care. The secretary shall specify who shall provide the monitoring services and the terms under which the monitoring shall be performed.

(d) The secretary may revoke an extraordinary medical placement under this subsection at any time;

(5) The governor, upon recommendation from the clemency and pardons board, may grant an extraordinary release for reasons of serious health problems, senility, advanced age, extraordinary meritorious acts, or other extraordinary circumstances;

(6) No more than the final six months of the sentence may be served in partial confinement designed to aid the offender in finding work and reestablishing himself or herself in the community;

(7) The governor may pardon any offender;

(8) The department may release an offender from confinement any time within ten days before a release date calculated under this section; and

(9) An offender may leave a correctional facility prior to completion of his or her sentence if the sentence has been reduced as provided in RCW 9.94A.870.

Notwithstanding any other provisions of this section, an offender sentenced for a felony crime listed in RCW 9.94A.540 as subject to a mandatory minimum sentence of total confinement shall not be released from total confinement before the completion of the listed mandatory minimum sentence for that felony crime of conviction unless allowed under RCW 9.94A.540, however persistent offenders are not eligible for extraordinary medical placement.

(Dkt. # 25, Exhibit 3).

When an inmate is first transferred to the Department of Corrections, staff at the Department calculates at least three possible release dates for the inmate. The first of these dates is the maximum release date. A maximum release date is the date an inmate will be released because they have served the entire sentence

1   imposed.  The second date is an earned early release date, ERD.  This is the date an inmate may be released if

2   they earn all available sentence reductions and do not lose earned time for misbehavior.  Release on this date is

3   not automatic for all inmates.  The third date the department calculates is an adjusted release date.  This is the

4   projected date when an inmate may be eligible for release if they lose no further good time or earned time.

5   This date along with the earned early release date changes when an inmate does not earn or loses a possible

6   reduction in their sentence.  The court understands that by statute an inmate cannot receive earned early release

7   credits before they have been earned.  (Dkt. # 25, Exhibit 3).  "The correctional agency shall not credit the

8   offender with earned release credits in advance of the offender actually earning the credits."  See, RCW

9   9.94A.728 (1).

10         Certain classes of inmates have periods of supervision at the end of their incarceration.  These inmates

11  are not allowed to earn earned early release because of the nature of their crime.  These inmates receive

12  supervision by way of community placement or community custody "in lieu of" earned early release.  Plaintiffs

13  are persons whose Judgment and Sentence included community placement or community custody following

14  release and were held beyond their earned early release dates, (ERDs), without a hearing.  Defendant Lehman

15  contends none of these persons were entitled to general release on their earned early release date.  The

16  defendant states those inmates who do not have a community custody/community placement requirement in

17  their criminal Judgments and Sentence are required by state law and DOC policy to be released on their earned

18  early release dates and are so released.  (Dkt. # 23, page 2).  Plaintiffs have not come forward with any

19  evidence to contradict this assertion.  Thus, this action deals with inmates who reached their earned early

20  release date and were not released on that date because either community custody or community placement was

21  imposed in the Judgment and Sentence.

22                                        DISCUSSION

23         A.      The standard of review.

24         Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

25  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

26  there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

27  law."  Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

28  nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

1   nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

2       There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

3   rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

4   475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

5   simply "some metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a

6   material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge

7   or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253

8   (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir.

9   1987).

10      The determination of the existence of a material fact is often a close question.  The court must

11  consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

12  preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

13  809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

14  party only when the facts specifically attested by the party contradicts facts specifically attested by the

15  moving party.  Id.

16      The nonmoving party may not merely state that it will discredit the moving party's evidence at trial,

17  in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at

18  630 (relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits is not sufficient, and

19  "missing facts" will not be "presumed."  Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89

20  (1990).

21      B.      The doctrine of qualified immunity.

22      Government officials are given qualified immunity from civil liability under § 1983 insofar as their

23  conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

24  would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity

25  defense, the court must determine:  (1) what right has been violated;  (2) whether that right was so "clearly

26  established" at the time of the incident that a reasonable officer would have been aware of its

27  constitutionality;  and (3) whether a reasonable public officer could have believed that the alleged conduct

28  was lawful.  See  Gabbert v. Conn, 131 F.3d 793, 799 (9th Cir.1997); overruled on other grounds, Conn v.

Gabbert, 526 U.S. 286 (1999).  Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).  The doctrine allows for mistakes in judgement and a Government Official will not be held liable unless the unlawfulness of their action should have been apparent.  Act Up!/Portland v. Bagley, 988 F.2d. 868 (9th Cir. 1993).

C.      Analysis.

The court begins by noting that an inmate has no constitutional right to release before expiration of their sentence.  Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979).  Nor have the Washington State Appellate Courts recognized an independent state created interest in amassing early release credits.  In Re Galvez, 79 Wash App 655 (Wash. 1995).  Thus, plaintiff's contention that credits may only be lost for bad behavior or failure to participate in assigned programming is simply incorrect as a matter of law.  (Dkt. # 25 page 4).  An inmate in administrative segregation for instance, may be willing to program and may have committed no violation of prison rules but may still not be able to earn credits because placement in administrative segregation may prevent programming.  This does not end the court's analysis because in this case the court is not concerned with the granting or denial of earned early release time.  Under the facts of this case each plaintiff has been granted the credits or time off their sentence and is eligible for release, subject to the approval of the release plan by the Department of Corrections and whatever public notification may be mandated by state law.

There are two questions this court must answer.  The first question is whether the Due Process Clause of the 14th Amendment requires a hearing prior to denial of a release plan and the second question is whether the law was clearly established that such a hearing was required.

The court cannot overemphasize that the interest at issue in this case must be a state created liberty interest and is not an interest found under the 14th Amendment Due Process Clause itself.  Normally the court would first determine whether there is in fact a state created liberty interest.  The Washington State Court of Appeals found there to be a "limited liberty interest" in Crowder, but the court did not define what a "limited liberty interest" is and approved post depravation remedies which only included the Department helping Mr. Crowder to obtain release.  In Re Crowder, 97 Wash App. 598 (1999).  No hearing of any type was ordered.

In Dutcher the same court emphasized it was operating under the State Rule of Appellate Procedure 16.4 which did not required a finding of a constitutional violation and only required a finding of

unlawful restraint under state law. <u>Dutcher</u> 114 Wash. App. at FN 3 and 4; <u>Citing In Re Cashaw</u>, 123 Wash. 2d 138 (1994). <u>Cashaw</u> specifically rejected the contention that procedural rules which are not outcome determinative create a liberty interest protected by Due Process. <u>In Re Cashaw</u>, 123 Wn 2d. at 146. In <u>Cashaw</u> the Washington State Supreme Court indicated the Indeterminate Sentence Review Board must follow its own rules and granted relief using the State Rule of Appellate Procedure 16.4. This grant of relief was not based on a finding of any constitutional violation.

The Washington State Supreme Court in <u>Cashaw</u> was careful to grant relief only on state grounds. Indeed, the State Supreme Court in <u>Cashaw</u> analyzed what is needed to find a state created liberty interest and found no due process violation in that case. The State Supreme Court's analysis in <u>Cashaw</u> is instructive regarding what constitutes a liberty interest and when such interests rise to the level of a state created liberty interest protected by the Due Process Clause of the United States Constitution. This court adopts the analysis set forth by the Washington State Supreme Court. The court stated:

> Liberty interests may arise from either of two sources, the due process clause and state laws. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1089 (9th Cir.1986), <u>cert. denied</u>, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal constitution does not, of its own force, create a liberty interest under the facts of this case for it is well settled that an inmate does not have a liberty interest in being released prior to serving the full maximum sentence. <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); <u>Ayers</u>, 105 Wash.2d at 164-66, 713 P.2d 88; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635.
>
> However, as indicated above, state statutes or regulations can create due process liberty interests where none would have otherwise existed. <u>See Hewitt</u>, 459 U.S. at 469, 103 S.Ct. at 870; <u>Toussaint</u>, 801 F.2d at 1089; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635. By enacting a law that places substantive limits on official decisionmaking, the State can create an expectation that the law will be followed, and this expectation can rise to the level of a protected liberty interest. <u>See Toussaint</u>, 801 F.2d at 1094.
>
> For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "**specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow**". <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); <u>Swenson v. Trickey</u>, 995 F.2d 132, 134 (8th Cir.), <u>cert. denied</u>, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.**

<u>In Re Cashaw</u>, 123 Wn 2d at 144 (emphasis added).

The Department has been mandated by statute to implement a system that allows for the possibility of early release. For some persons the release is automatic when they reach their earned early release date

because they have no supervision following incarceration. According to the defendant those persons are released on their earned early release date. Further, those persons have a liberty interest in release as the discretion to hold them does not exist. Plaintiffs have not come forward with evidence to contradict defendant's assertion that these persons were released. Inmates facing community placement or community custody can earn a potential reduction in sentence and be placed on community placement or community custody at the discretion of the Department of Corrections.

The parties argue whether the discretion of the Department is unfettered or restricted with regards to what the department may consider. This argument misses the point. RCW 9.94A.728(2)(d) grants the Department the ability and the discretion to deny a release plan for any person who would receive community custody if the Department determines the plan may violate conditions of a sentence or supervision, may place the offender at risk to reoffend, or presents a risk to victim or community safety. Thus, whatever limits have been placed on the Department are not outcome determinative and there is no state created liberty interest. By way of example, the discretion of the Department has not been limited when the Department considers how close to a school or day care an offender may reside or how close to a tavern or bar an offender may reside. The Department still has a significant degree of discretion in granting or denying release to community placement or community custody. As the statute itself notes "The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." (Dkt. # 25 Exhibit 3, page 3, RCW 9.94A.728 (2)(d).

A careful reading of the Washington State Court of Appeals holding in Dutcher shows the court to be acting pursuant to state Rule of Appellate Procedure 16.4 and shows the court was using the lesser standard of review which did not require a finding of a constitutional violation. The ruling in Dutcher that the department must follow the state statutory system and consider plans on the merits does not equate to a finding of a state created liberty interest in release and the holding in Dutcher did not eliminate the Departments discretion.

There has been a progression in the State Court of Appeals decisions in which the terminology and reasoning are expanding. In Crowder the court found only a "limited liberty interest." In Re Crowder, 97 Wash App. 598 (1999). In Dutcher, the court used the reasoning of Cashaw to grant relief solely on state

1    grounds but inaccurately stated the interest was a "limited but protected liberty interest." <u>Dutcher</u>, 114

2    Wash. App at 758.  Now, in the newest case, the same court is citing <u>Cashaw</u> and <u>Dutcher</u> for the

3    proposition that there is a limited liberty interest protected by Due Process.  <u>In Re Liptrap</u>, 127 Wash. App

4    463, 469  (2005).  To the extent that <u>Liptrap</u>, indicates there is a state created liberty interest in release

5    credits for persons subject to community custody the cases cited do not support the proposition and the

6    court declines to follow this decision.  A potential for release based on the Department exercising its

7    discretion does not equate to an absolute interest in release that a person with earned time and no post

8    release supervision enjoys.  The later has a protected liberty interest, the former has only an expectation

9    they may be released.

10        Plaintiff's admit that <u>Liptrap</u> is too new to have placed defendant Lehman on notice that a hearing

11   was required before denial of release to community placement or community custody and they

12   acknowledge <u>Crowder</u> did not address the issue.  (Dkt. # 25, page 19).  Thus the case law supports a grant

13   of qualified immunity in this case.

14        As noted above neither <u>Crowder</u> nor <u>Dutcher</u> found a state created liberty interest.  Under the

15   analysis set forth in <u>Cashaw</u> there may not be a federally protected interest in this case.  The holding of

16   <u>Dutcher</u> is that an agency follow its own rules and statutes.  While in some cases that may become

17   outcome determinative and rise to the level of a state created liberty interest it is not outcome

18   determinative in this case because of the amount of discretion given the Department.

19        There does not appear to be a state created liberty interest at stake in this case, and it certainly was

20   not clearly established law that these plaintiffs were entitled to a hearing prior to denial of their release

21   plans.  Indeed, the plaintiffs can point to no case where the state court ordered such a hearing or placed the

22   defendant on notice that state law required such a hearing.  The statutes creating the potential of

23   community custody do not set forth any mandate that the Department hold such hearings and only mandate

24   the Department consider properly submitted release plans for persons who have reached their possible

25   earned early release date subject to community custody or community placement after release.

26        At the very least the defendant is entitled to qualified immunity.  Accordingly the defendant's

27   motion for summary judgment on the damage claims should be **GRANTED.**

28                                    <u>CONCLUSION</u>

1    For the reasons stated above the court should **GRANT** defendant's motion for Summary Judgment

2    and dismissal of all damage claims.  A proposed order accompanies this Report and Recommendation.

3    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

4    parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ.

5    P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v.

6    Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to

7    set the matter for consideration on **September 16th 2005**, as noted in the caption.

8

9    DATED this 25th day of August, 2005.

10

11    */S/ J. Kelley Arnold*
       J. Kelley Arnold
12     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 12